**In re Danny L. REVEAL, Carolyn R. Reveal, Debtors.**

**STAR BANK, N.A., Plaintiff,**

**v.**

**Danny L. REVEAL, Defendant.**

**Bankruptcy No. 3-92-00184.**
**Adv. No. 3-92-0223.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 7, 1992.

John D. Squires, Frank A. Malocu, Dayton, OH, for defendant.

Lawrence T. Burick, Scott A. King, Dayton, OH, for plaintiff.

## DECISION ON ORDER GRANTING IN PART AND DEFERRING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

THOMAS F. WALDRON, Bankruptcy Judge.

This proceeding, which arises under 28 U.S.C. § 1334(b) in a case referred to this court by the Standing Order of Reference entered in this district on July 30, 1984, is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I)—determinations as to the dischargeability of particular debts.

This proceeding is presently before this court on the Defendant's Motion For Judgment On The Pleadings, Or In The Alternative For Partial Summary Judgment (Doc. 7–1, 7–2). In response, the plaintiff filed a Memorandum In Opposition To Motion To Dismiss, Or, In The Alternative, For Partial Summary Judgment (Doc. 10–1).

### DISCUSSION

Federal Rule of Bankruptcy Procedure Rule 12(b) incorporates Federal Rule of Civil Procedure 12(c) in its entirety. Fed. R.Civ.P. 12(c) permits a judgment on the pleadings and provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In considering a motion for judgment on the pleadings, all allegations of the opposing party's pleadings are accepted as true, and all allegations of the moving party which have been denied are accepted as false. *See Paskvan v. Cleveland Civil Service Comm'n*, 946 F.2d 1233, 1235 (6th Cir.1991). Conclusions of law, however, are not deemed admitted. 2A J. Moore, *Moore's Federal Practice*, para 12.15 at

**290**

12–106 (2d ed. 1992). A motion for judgment on the pleadings is granted when no material issue of fact exists, and the moving party is entitled to judgment as a matter of law. *Paskvan*, 946 F.2d at 1235.

The plaintiff, Star Bank, commenced this adversary proceeding against the chapter 11 debtor, Danny L. Reveal, the defendant. In its complaint, the plaintiff states that, on or about July 30, 1991, the defendant executed and delivered a promissory note to the plaintiff in the principal sum of $100,-000.00 plus interest and collection costs, including reasonable attorney fees. This note constituted a renewal of an earlier note. As of the petition date, the defendant owed the plaintiff under this note the sum of $87,975.41 plus interest and collection costs, including reasonable attorney fees.

Under its first and second claims for relief, the plaintiff asserts that to induce it to extend credit under this note, the defendant made false representations with respect to the value of his assets. As a result, the plaintiff asserts that it has been damaged in an amount equal to the amount due under the note in the sum of $87,975.41 plus interest and collection costs, including attorney fees, and that, pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(2)(B), this indebtedness is excepted from discharge. The defendant asserts that under controlling Ohio law the plaintiff cannot recover attorney fees.

Creditors are entitled to recover attorney fees in bankruptcy claims if there is a contractual right to receive them valid under state law. *Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1168 (6th Cir.1985). The parties agree that the contract provides for the payment of attorney fees. The parties disagree, however, on the issue of whether state law allows for the enforcement of such contractual provisions. The defendant asserts that, pursuant to *Miller v. Kyle*, 85 Ohio

St. 186, 97 N.E. 372 (1911), the plaintiff is not entitled to recover attorney fees; whereas, the plaintiff asserts that the rationale in *Miller* has been destroyed as a result of an amendment in 1984 of the Ohio usury statutes and has been substantially eroded as a result of Ohio Supreme Court decisions rendered in the 1980s.

In *Miller*, the Supreme Court of Ohio, in accordance with well-settled law, concluded that stipulations incorporated in promissory notes providing for the payment of attorney fees if the principal and interest are not paid at maturity are contrary to public policy and are void.[1] The *Miller* court stated that, absent statutory provisions or bad faith, such provisions are contrary to public policy and concluded that such clauses would be utilized to evade usury laws and would result in a proliferation of litigation.

A precedent-making decision on an issue of law may be overruled by a constitutionally valid statute or may be overruled by the court that rendered the decision or by a higher ranking court. 20 Am.Jur.2d, Courts § 231 at 560. There is no existing statute which overrules the court's holding in *Miller*, nor has the supreme court expressly overruled the *Miller* decision.

Precedent-making decisions may also be overruled, however, by implication so that a later decision overrules prior decisions which conflict with it whether such prior decisions are or are not mentioned. 20 Am.Jur.2d, Courts § 232 at 561.

[C]ertain opinions take a dim view of the proposition that a case may be overruled by implication in a later decision. For example, it has been stated that an intention to overrule a number of longstanding precedents should be expressed in plain and explicit terms, that a well-established and important legal principle will not be deemed to have been overruled by implication in subsequent decisions, and that a subsequent decision cannot, by mere implication, be held to

---

1. The court in *Miller* set forth this conclusion in the syllabus of the opinion. Under Ohio law, the syllabus of the Ohio Supreme Court opinion establishes the law of the case. *Burton v. Durkee*, 162 Ohio St. 433, 123 N.E.2d 432, 433

(1954); *see also Luring v. Adm'r, Ohio Public Employees Deferred Compensation Program (In re Petrey)*, 116 B.R. 95, 99 n. 2 (Bankr.S.D.Ohio 1990).

overrule a prior case unless the principle is directly involved and the inference is clear and impelling.

*Id.* (citations omitted). Although decisions rendered by the supreme court subsequent to *Miller* may conflict with the *Miller* rationale, upon examination of case law which has developed pertaining to the recovery of attorney fees, this court concludes that *Miller* has not been overruled by implication. Notably, the court has expressly distinguished the *Miller* holding from cases in which it permitted the recovery of attorney fees, thereby alleviating any suggestion that the *Miller* holding has been overruled by implication.[2]

For example, in *Nottingdale Homeowners' Ass'n, Inc. v. Darby*, 33 Ohio St.3d 32, 514 N.E.2d 702 (1987), the court held that provisions contained in a declaration of condominium ownership or condominium by-laws requiring that a defaulting unit owner be responsible for the payment of attorney fees incurred by the unit owners' association in either a collection action or a foreclosure action against the defaulting owner for unpaid common assessments were enforceable. In reaching this conclusion, the *Nottingdale* court distinguished *Miller* on its facts, stating, "[a]lthough *Miller* does involve a stipulation to pay attorney fees, the case more specifically deals with a commercial transaction and a promissory note containing an attorney fee

stipulation. Thus, *Miller* is factually a far cry from the case now before us which involves a specific contractual provision that was assented to in a non-commercial setting by competent parties with equal bargaining positions and under neither compulsion nor duress." 514 N.E.2d at 705.

The court has also distinguished *Miller* from cases involving indemnity contracts, see *Worth v. Aetna Casualty & Surety Co.*, 32 Ohio St.3d 238, 513 N.E.2d 253, 254 (1987). In *Worth*, the court held that an "indemnitor's express agreement to indemnify an indemnitee for qualified legal expenses incurred is enforceable and is not contrary to Ohio's public policy." The court expressly stated that its holding did not disturb the holding in *Miller* and like cases.

In *Sekeres v. Arbaugh*, 31 Ohio St.3d 24, 508 N.E.2d 941 (1987), the court examined whether the provisions in a commodity futures agreement were valid, including the provision which provided that New York law would govern in the event of litigation and the provision which provided for the reimbursement of any costs and legal fees Merrill Lynch might incur in successfully defending itself in any action brought against it by Sekeres, the plaintiff, with respect to his account. The court found New York law to be applicable and, as a

---

**2.** The plaintiff submitted several unreported appeals court decisions, see *Hilb, Rogal and Hamilton Agency of Dayton, Inc. v. Reynolds*, No. 13189, 1992 WL 430328, at *3–4, 1992 Ohio App. LEXIS 2952 at *9 (Apps.Ct., 2d App.Dist. June 10, 1992) (court found attorney fees clause enforceable in employment contracts, expressly distinguishing *Miller* as it involved debt instruments); *Marcy Estates, Inc. v. The Reserve Co., Inc.*, No. 90–G–1614, 1991 WL 216942, 1991 Ohio App. LEXIS 5134 (Apps.Ct., 11th App.Dist. Oct. 25, 1991) (attorney fees clause enforceable in a contract to purchase land); *GMS Management Co., Inc. v. K & K Indus., Inc.*, No. CA 8279, 1991 WL 70154 at *3, 1991 Ohio App. LEXIS 2036 at *7–8 (Apps.Ct., 5th App.Dist. April 25, 1991) (court found legal fees recoverable under lease agreement. The court distinguished its holding from *Nottingdale* stating, "[a]lthough *Nottingdale* was specifically limited to a non-commercial transaction, we believe that it would be illogical to hold unenforceable a contractual provision for the payment of at-

torney's fees in a commercial transaction where there is no evidence of unequal bargaining positions and no evidence of compulsion or duress."); *ATEC, Inc. v. Columbia Portland Cement Corp.*, No. 88AP–380, 1988 WL 137076, 1988 Ohio App. LEXIS 5337 (Apps.Ct., 10th App.Dist. Dec. 22, 1988) (attorney fees recoverable under lease agreement).

Without determining whether these appeals court decisions undercut the viability of the *Miller* holding, as previously stated, the *Miller* holding cannot be overruled by a court ranking lower than the supreme court. As one appeals court acknowledged, "if the general rule is to be modified, extended or otherwise changed, this must be accomplished by the Supreme Court. Likewise, if an additional exception is to be engrafted, it must be done by the Supreme Court, not an intermediate appellate court which is bound by Supreme Court decisions." *Buller v. Respicare, Inc.*, 39 Ohio App.3d 17, 528 N.E.2d 1282, 1283 (1987).

result, found the attorney award provision in the agreement to be valid under New York law. The dissent, in part, noted:

> The imbalance is obvious. If Merrill Lynch can enforce such a provision in its pre-printed, form contract, why not insurance companies, banks, landlords, auto lessors, airline carriers, sporting event promoters (in language printed on the ticket of admission) and anyone else with whom the public does business? The party with the power to include such provisions in a pre-printed contract is afforded a magnificent tool to discourage, if not eliminate, litigation against itself.

*Sekeres,* 508 N.E.2d at 945.

Although *Sekeres* may appear to undercut the rationale in *Miller,* the *Sekeres* court expressly held that New York law was applicable and, consequently, there was no need to address whether it violated Ohio public policy. Therefore, *Sekeres* does not overrule *Miller* by implication.

*Miller* remains viable and constitutes applicable state law. Although the rationale underpinning *Miller* may be collapsing, this court lacks authority to depart from state law enunciated by the highest court of the state which is directly on point. Therefore, having determined that, at the present time, Ohio law continues to prohibit stipulations in promissory notes requiring payment of attorney fees, the defendant's motion for judgment on the pleadings is granted with respect to the plaintiff's first and second claims for relief.

■ Under its third claim for relief, the plaintiff seeks punitive damages in the sum of $100,000, asserting that the defendant's representations were made "intentionally, willfully, and maliciously." (Doc. 1, para. 30). The defendant asserts that punitive damages "cannot be subject to a determination of nondischargeability under 11 U.S.C. Section 523(a)(2) since they cannot represent monies or credit 'obtained by' the

alleged fraud." (Doc. 7–1, 7–2, p. 6). In response to the defendant's assertions, the plaintiff argues that, under Ohio law, to give rise to a claim for punitive damages, there must be a showing that the fraud was malicious; therefore, the complaint, although not expressly citing § 523(a)(6), asserts a claim under § 523(a)(6).

The defendant requests a judgment on the pleadings only with respect to § 523(a)(2); thus, this court is not determining whether the plaintiff has stated a claim under § 523(a)(6) nor is this court determining whether punitive damages may be excepted from discharge under § 523(a)(6).

At the outset, this court notes that the issue presented by the defendant's motion for judgment on the pleadings is one which is distinct—whether punitive damages may or may not be a component of a debt excepted from discharge under 11 U.S.C. § 523(a)(2) by the bankruptcy court as a trial court.[3]

In resolving this issue, the court commences with methodology set forth by the Supreme Court for statutory interpretation. Although "canons of construction are no more than rules of thumb that help courts determine the meaning of legislation," *Connecticut Nat'l Bank v. Germain,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992), the subject of an "appropriate analytical task" and an "agreed upon methodology" in statutory interpretation of the Bankruptcy Code has been continually emphasized in recent Supreme Court decisions. *Patterson v. Shumate,* —— U.S. ——, —— n. 4 and ——, 112 S.Ct. 2242, 2248 n. 4 and 2251, 119 L.Ed.2d 519 (1992).

Initially, examination commences with the language of the statute. *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 557, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990) ("the fundamental canon [of] statutory interpretation begins with

---

3. This court is not determining whether punitive damages as a component of a judgment previously determined by a state court will be entitled to preclusive effect in a bankruptcy court proceeding in which the court must determine whether the entire judgment should be

excepted from discharge under § 523(a)(2). *See e.g., Palmer v. Levy (In re Levy),* 951 F.2d 196 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Goins v. Day (In re Day),* 137 B.R. 335 (Bankr.W.D.Mo.1992).

the language of the statute itself."). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Germain*, — U.S. at —, 112 S.Ct. at 1149. If the statutory language is ambiguous a court must resort to examination of legislative history. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). As the Supreme Court stated in *Ron Pair*, "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" 489 U.S. at 242, 109 S.Ct. at 1031. "In such cases, the intention of the drafters, rather than the strict language, controls." 489 U.S. at 242, 109 S.Ct. at 1031. Further, it is necessary to note that a court should be reluctant to "accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Dewsnup v. Timm*, — U.S. —, —, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992).

■ Section 523(a)(2), in relevant part, provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive[.]

Under § 523(a)(2), the language, "to the extent obtained by," must be examined to determine its meaning. Section 523(a)(2) was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 to include this language. 3 L. King *Collier on Bankruptcy*, para. 523.08 at 523–45 (15th ed. 1992). The plain meaning of this statutory language suggests that this subsection "limits nondischargeability to the amount of benefit to the debtor or loss to the creditor the act of fraud itself created." *Palmer v. Levy (In re Levy)*, 951 F.2d 196, 198 (9th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). Punitive damages do not constitute a benefit to a debtor who has engaged in fraud nor do they represent a loss to a creditor. Rather, punitive damages are "'awarded as an example to others or as a penalty or by way of punishment'...." *Id.* (quoting *Haile v. McDonald (In re McDonald)*, 73 B.R. 877, 882 (Bankr.N.D.Tex. 1987)).

Based upon the foregoing, this court concludes that punitive damages may not be a component of a debt excepted from discharge under § 523(a)(2) by the bankruptcy court as a trial court. Accordingly, with respect to the plaintiff's third claim, the defendant's motion for judgment on the pleadings is granted.

Under its fourth and final claim, the plaintiff asserts that the defendant's discharge must be denied under 11 U.S.C. § 727(a)(5). The defendant asserts in its motion for judgment on the pleadings that § 727 does not apply in chapter 11 proceedings because § 727 is contained in subchapter II of chapter 7, and 11 U.S.C. § 103(b) provides that "subchapters I and II of chapter 7 of this title apply only in a case under such chapter." (Doc. 7–1, 7–2, p. 7).

Section 727 may not be relied upon directly as a basis to deny a discharge in chapter 11 proceedings; however, under 11 U.S.C. § 1141, there is a limited instance where § 727 does play a role. *Park View Fed. Savings and Loan Ass'n v. Rich–*

*Morrow Realty Co., Inc. (In re Rich–Morrow Realty Co., Inc.)*, 100 B.R. 893, 895 (Bankr.N.D.Ohio 1989); *Reynolds v. Miller (In re Miller)*, 97 B.R. 760 (Bankr. W.D.N.Y.1989); *United Bank of Bismarck v. Pfliger (In re Pfligerk)*, 57 B.R. 467, 468 (Bankr.D.N.D.1985). Section 1141(d)(1)(A) provides that, unless otherwise provided for in subsection (d), in the plan, or in the order confirming the plan, the debtor receives a discharge from any debt that arose before the date of confirmation or from certain kinds of debt under § 502.

 Two exceptions exist. First, under 11 U.S.C. § 1141(d)(2), the confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under § 523. Second, under § 1141(d)(3):

> The confirmation of a plan does not discharge a debtor if—
>
> > (A) the plan provides for the liquidation of all or substantially all of the property of the estate;
> >
> > (B) the debtor does not engage in business after consummation of the plan; and
> >
> > (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

Thus, if a debtor does not continue in business and the plan provides for liquidation of the debtor's nonexempt property, then the debtor may be denied a discharge under § 727. *Reynolds v. Miller (In re Miller)*, 80 B.R. 270, 271 (Bankr.W.D.N.Y. 1987) (quoting 5 *Collier on Bankruptcy*, para. 1141.01[4][a] (15th ed. 1985)).

 It is the second exception which is relevant in this proceeding; however, a plan of reorganization has not been filed. Thus, the issue of whether the debtor's discharge may be denied is premature. Therefore, the plaintiff's fourth claim requesting that the debtor's discharge be denied under 11 U.S.C. § 727(a)(5) is deferred.

Accordingly, the Defendant's Motion For Judgment On The Pleadings, Or In The Alternative For Partial Summary Judgment (Doc. 7–1, 7–2) is GRANTED with respect to the plaintiff's first and second claims for relief in that it is determined that, at the present time, Ohio law continues to prohibit enforcement of provisions in promissory notes requiring payment of attorney fees, is GRANTED with respect to the plaintiff's third claim for relief in that it is determined that punitive damages may not be a component of a debt excepted from discharge under 11 U.S.C. § 523(a)(2) by a bankruptcy court as a trial court, and is DEFERRED with respect to the plaintiff's fourth claim for relief.

An order in accordance with this decision is simultaneously entered.

SO ORDERED.