In re Robert D. ROLLMAN and Jennifer
L. Rollman, Debtors.

BENEFICIAL MORTGAGE CO.
OF OHIO, INC., Plaintiff,

v.

Robert D. ROLLMAN, et al., Defendants.

Bankruptcy No. 97–3277.

United States Bankruptcy Court,
N.D. Ohio.

April 7, 1998.

Richard J. Szczepaniak, Toledo, OH, for
plaintiff, Beneficial Mtg. Co.

Gordon R. Barry, Toledo, OH, for defen-
dants, Robert D. Rollman and Jennifer L.
Rollman.

### *DECISION AND ORDER*

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court after
Trial on Complaint to Determine Discharge-
ability and/or Objection to Discharge Pursu-

ant to 11 U.S.C. § 523 and 11 U.S.C. § 727. The allegations of Plaintiff, Beneficial Mortgage Co. of Ohio, Inc. (hereafter "Beneficial"), rest upon what Beneficial characterizes as Defendants' incomplete disclosure of obviously relevant financial information when Defendants refinanced an existing loan with Beneficial. Beneficial alleges that Defendants did not reveal numerous debts which existed at the time of the refinancing. Specifically, Beneficial points to the loan application prepared by Beneficial but signed by Defendants. The information on the application is truthful, but the reverse side, which asks for a detailed description of assets and liabilities, was left blank. Beneficial asserts that had it known of all of Defendants' liabilities, not just those on the parties' credit report, it would not have refinanced the loan.

Defendants argue that they only refinanced the loan at the behest of Beneficial, who admittedly had made numerous collection calls at their home and work, and that Beneficial did not ask for any further information. Further, it is clear that Beneficial was aware that Defendants were having financial difficulties at this time, as this was the cause for the refinancing. It was Beneficial's proposal that Defendants refinance the existing loan so that they would not be immediately responsible for all the overdue payments. Finally, Defendants assert that Beneficial would have accepted the refinancing in any event not only because they had nothing to lose (the only new value the Defendants received were insurance policies and about $4.00), but because Mrs. Rollman, who was not liable on the previous debt, was co-signing on the refinanced loan.

■ Beneficial's allegations fall under § 523(a)(2)(B), as misstatements concerning financial condition are explicitly excluded from § 523(a)(2)(A). Misstatements under § 523(a)(2)(B) must have been in writing. Beneficial argues that the standard for a creditor's reliance on § 523(a)(2)(B) misstatements is that of justifiable reliance, pursuant to the recent Supreme Court case of *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). This is clearly an error. Section 523(a)(2)(B) expressly provides that the creditor's reliance must have been reasonable. Indeed, it was this provision, and § 523(a)(2)(A)'s lack of similar language, which formed the basis for the Supreme Court's conclusion that the less stringent standard of justifiable reliance applies in § 523(a)(2)(A) cases.

■ Even if this Court were to assume in this case that Defendants made false representations, that an obvious omission of information from a written document can be a false statement in writing, and that Beneficial in fact relied upon such false representations, this Court would not find Beneficial's reliance reasonable. It was Beneficial's application form, and it was Beneficial who chose to refinance the loan even though Defendants did not fill out the reverse side which calls for information as to assets and liabilities. Beneficial is a very large and sophisticated consumer finance company, and it would clearly be unreasonable for such a company to base a loan on a consumer's financial condition about which it did not even require written disclosure. It was obvious that Defendants were not disclosing their present financial condition, and this Court will not allow Beneficial to import an unwritten requirement into consumer loans that the consumer disclose information which may or may not be on their credit report, when the company could easily have required such disclosure in writing.

A break down of the amounts financed reveals the real reason for the refinancing. Of the $3,395.39 principal amount of the loan, only $2,660.31 was used to pay off the existing loan (which was the result of an unsolicited check which came to Mr. Rollman in the mail), and only $4.03 new cash was paid to Defendants. The balance was made up of other charges Beneficial added while Debtors were in the Beneficial office in response to the Beneficial's collection calls. Also, Beneficial required a $218.70 mandatory annual property insurance premium to cover the Defendants' household property, taken as collateral to secure the loan, overvalued at only $630.00. (Beneficial had to know the collateral was overvalued because the value was clearly based on replacement value, i.e. the value of new equipment, when this equipment was obviously used). Fur-

ther, Beneficial charged the Defendants $160.00 in prepaid finance charges. Beneficial also persuaded Defendants into buying life insurance for another $161.84, and disability insurance for another $190.51. (It is the understanding of this Court that Beneficial receives commissions on the sale of insurance.) Totaled, these extra charges amount to $731.05 for Defendants to refinance a $2,660.31 loan, and this does not include interest at an annual percentage rate of 26%. All this so that Defendants would not be immediately responsible for overdue payments. It does not appear that Beneficial even lowered the monthly payment amount. Indeed, payments went up $20.00 per month, and Mrs. Rollman, who was not liable on the original loan, had to agree to liability as well.

Beneficial's claim also fails because Beneficial did not in fact rely on any misrepresentations made by Defendants. Though in *In re Plechaty*, 213 B.R. 119 (6th Cir. BAP 1997), the Bankruptcy Appellate Panel for the Sixth Circuit recently held that a creditor need not prove specific damages as a result of a refinancing of an existing loan based upon false representations, this does not negate the element of reliance in fact. Indeed, in *Plechaty* and each of the cases it relies upon, actual reliance was analyzed and found. *Plechaty*, 213 B.R. at 126; *In re McFarland*, 84 F.3d 943, 947 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996); *In re Norris*, 70 F.3d 27, 30 (5th Cir.1995); *In re Goodrich*, 999 F.2d 22, 24–25 (1st Cir.1993); *In re Gerlach*, 897 F.2d 1048, 1052 (10th Cir.1990). Overlooking the actual reliance requirement would be in plain contravention of the language and intent of § 523(a). Section 523(a)(2) specifically provides for the nondischargeability of extensions of credit, but only "to the extent obtained by" the misstatement.

In this case, it clearly appears that Beneficial was using the refinancing as a way to improve its position against the Debtors. Beneficial required Mrs. Rollman to sign onto the refinanced loan when doing so would provide no practical benefit to the Defendants. Beneficial also took the opportunity to sell the Defendants an insurance policy they could not afford, and for which Beneficial would gain a commission. The reason Beneficial did not require Defendants to list their assets and liabilities was because Beneficial did not care. There was no reason not to refinance the loan. Beneficial offered the testimony of its branch manager that under company guidelines, the refinancing would not have been approved had Beneficial been aware of the additional liabilities. This Court finds this testimony not to be helpful. It is obvious that even if Beneficial represented to Defendants that loan approval was required at all, such approval was perfunctory. Also, the witness presented neither worked with the Defendants or, even under Beneficial's version of the facts, gave the final approval of the loan. It is clear there was no reliance in fact in this case. This Court is aware of the "buyer beware" maxim, and that Defendants are responsible for their own actions, but there is no requirement that this Court must impute an element of good faith into Beneficial's actions which did not exist.

Beneficial's Complaint also makes a claim that Defendants' discharge should be denied under § 727. There was no evidence offered which would support such a claim. It appears that Beneficial included it merely as a matter of routine. Such a practice is to be discontinued, unless good cause exists for its insertion onto the Complaint.

For all these reasons, this Court finds Beneficial's Complaint to be unfounded. In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that Plaintiff's Objection to Defendants' discharge be, and is hereby, *DENIED*, and that Defendants' debt to Plaintiff be, and is hereby, determined *DISCHARGEABLE*.