NATIONAL CITY BANK, Appellee,

v.

THE PLECHATY COMPANIES et al., Appellants.

[Cite as *Natl. City Bank v. The Plechaty Cos.* (1995), 104 Ohio App.3d 109.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67194.

Decided May 24, 1995.

110

*Weltman, Weinberg & Associates Co., L.P.A., Robert B. Weltman, Scott S. Weltman* and *Rosemary Taft Milby,* for appellee.

*Kaufman & Cumberland Co., L.P.A., William W. Jacobs* and *David B. Webster,* for appellants.

NAHRA, Judge.

Appellants, Ben Plechaty and The Plechaty Companies, Inc. (hereinafter "TPC"), are appealing the trial court's denial of their motion for summary judgment and grant of summary judgment in favor of appellee, National City Bank. For the following reasons, we affirm.

Ben Plechaty's wife owned a majority of the shares of TPC. Ben Plechaty was chairman of the board of directors of TPC. TPC owned over eighty percent of the Hamilton Cast Corporation. Hamilton was a New York corporation in the business of casting precious metals for fine jewelry.

National City Bank provided Hamilton with a five million dollar line of credit, and Hamilton executed a promissory note to the bank for five million dollars. The note was secured by a security agreement in the inventory, equipment and accounts receivable of Hamilton. TPC guaranteed the debt of Hamilton.

In evidence is a purported guarantee of Hamilton's debt by Ben Plechaty personally. Plechaty contends that National City fraudulently procured this guarantee.

Hamilton defaulted on the note, with a balance due of approximately 1.6 million dollars. National City repossessed the accounts receivable of Hamilton. National City negotiated with Salvatore Esposito, president of Hamilton, to sell the accounts receivable of Hamilton to a new company owned by Esposito called

Integrity Casting Corporation. The receivables were $854,768 as of January 1, 1993. Based on the activity of Hamilton, aging of receivables and fair value to collect, National City offered to sell the receivables for $300,000. National City accepted a counteroffer of $275,000 from Integrity. The attorney for TPC and Ben Plechaty received copies of the correspondence evidencing these negotiations.

The sales transaction was structured as follows: Integrity executed a promissory note to National City for $1,643,784.94 plus interest, secured by the subject accounts receivable. Demand could be made on the note only if the terms of "the Guarantee" were not complied with. If the amounts set forth in "the Guarantee" were fully paid, the promissory note would be deemed satisfied. "The Guarantee" was a guarantee by Salvatore Esposito of the promissory note, but only up to $275,000. If Integrity or Esposito paid $275,000 to National City, neither Integrity nor Esposito would be liable on the promissory note. A bill of sale stated the assets were sold to Integrity and "consideration is a promissory note in the amount of $1,643,704.94." The affidavits of agents of National City stated that the intention of National City and Integrity was that the sales price was $275,000, subject to a 1.6 million dollar penalty for default.

TPC and Ben Plechaty signed acknowledgment letters agreeing to the sales transaction. The letters state:

"The undersigned expressly is not acknowledging the validity of any guarantee entered into by the undersigned, and in no way will the undersigned's consent to this transaction affect or prejudice any claims or defenses which the undersigned may have in connection with any such documents.

"However, the undersigned waives the right to raise as a defense to any such lawsuit, and to any deficiency balance which may result on the Promissory Note, the price for which the assets were purchased and/or the overall structure of that transaction."

The day before the sale, National City obtained a judgment by confession by Hamilton in a New York state court in the amount of $1,643,784.94 plus interest. National City obtained a cognovit judgment in the Cuyahoga County Court of Common Pleas against Hamilton Cast, but relief from judgment was granted pursuant to Civ.R. 60(B)(5).

Subsequently, Integrity paid the $275,000 as required by the guarantee, and National City released Integrity and Esposito from all obligations. National City sued appellants for the amount due on the Hamilton note, less $275,000.

After this appeal was filed, National City and another party filed an involuntary petition of bankruptcy against Ben Plechaty in the United States Bankruptcy Court, Northern District of Ohio. National City filed a suggestion of stay with

this court, to stay the appeal of Ben Plechaty. At oral argument, appellee stated that appellant had obtained relief from the automatic stay in the bankruptcy court, so it is not necessary to stay this appeal.

## I

■ Appellants' first assignment of error states:

"The trial court erred in denying defendants-appellants' motion for summary judgment because although the underlying debt to the appellee had been fully satisfied at a default sale by a promissory note from the new buyer. The trial court improperly found that the 'proceeds' from the sale, within the meaning of Ohio Revised Code § 1309.25(A) were limited to the cash portion of the transaction."

■ If a secured party disposes of collateral in a commercially reasonable manner, the secured party is entitled to any deficiency. The amount of deficiency is the difference between the amount of indebtedness and the actual proceeds. R.C. 1309.47(B)(2)(b) and (c); 1309.45(B). "Proceeds" are defined as:

" * * * whatever is received upon the sale, exchange, collection, or other disposition of collateral * * *."

Appellants argue that the proceeds included the promissory note in which Integrity promised to pay National City approximately 1.6 million dollars, the same amount as the Hamilton debt. Therefore, appellants assert there was no deficiency.

We agree that the proceeds include the promissory note and Esposito's guarantee. See *Gen. Elec. Capitol Corp. v. Deere Credit Serv.* (S.D.Ohio 1992), 799 F.Supp. 832, 836 (a note constitutes proceeds). The combined value of the promissory note and the guarantee was only $275,000, however. The promissory note was only worth 1.6 million dollars contingent upon the failure to make payments as set forth in the guarantee. Integrity made the payments as required by the guarantee, and thus the contingency requiring Integrity to pay 1.6 million dollars never happened. There is no factual dispute as to whether the proceeds amounted to $275,000 or 1.6 million dollars because the promissory note clearly sets out the contingent nature of any payments over $275,000. See, generally, *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 66, 609 N.E.2d 144, 145. The proceeds were $275,000 and there was a deficiency.

■ Appellants contend appellee did not act in a commercially reasonable manner, so appellee could not collect a deficiency judgment against appellants. See *Horizon Savings v. Wootton* (1991), 73 Ohio App.3d 501, 597 N.E.2d 1150; R.C. 1309.47(C); 1309.45(B). TPC asserts that a penalty of 1.6 million dollars

and a price of $275,000 was unreasonable. Appellants failed to raise this argument at the trial court level. A party moving for summary judgment must state the basis of his motion and point out the absence of a material fact or issue of law. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Dent v. Ford Motor Co.* (1992), 83 Ohio App.3d 283, 285, 614 N.E.2d 1074, 1076. Appellants cannot be granted summary judgment based on commercial unreasonableness of the sale because appellants failed to make this argument at the trial level.

■ Furthermore, appellants waived their right to raise price and/or the structure of the sales transaction, as a defense to an action for the deficiency balance. The waiver was valid under R.C. 1309.44(C) because the terms of the sale were not manifestly unreasonable. Appellants were not entitled to summary judgment.

Accordingly, this assignment of error is overruled.

## II

■ Appellants' second assignment of error states:

"The trial court erred in granting plaintiff-appellee's motion for summary judgment because appellee failed to establish notice or privity between a wholly owned subsidiary and either its parent corporation or the individual who purportedly guarantied [*sic* ] the debts of the subsidiary, sufficient for the doctrines of res judicata and collateral estoppel to apply to a confession of judgment from another state."

■ A subsequent action is barred by *res judicata* if a prior final judgment on the merits exists, involving the identical cause of action and the same parties or their privies. *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10; *Rogers v. Whitehall* (1986), 25 Ohio St.3d 67, 25 OBR 89, 494 N.E.2d 1387. Collateral estoppel bars relitigation of an issue if the same issue was actually and necessarily litigated in a prior action involving the same parties or their privies. *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978.

The New York confession of judgment by Hamilton and the present lawsuit do not involve the same cause of action. The right of action in each suit arose from different facts and different evidence is necessary to sustain each action. See *Norwood v. McDonald* (1943), 142 Ohio St. 299, 306, 27 O.O. 240, 243, 52 N.E.2d 67, 71; *Jehovah's Witnesses, Inc. v. Lakewood* (1984), 20 Ohio App.3d 338, 340, 20 OBR 441, 443–444, 486 N.E.2d 194, 196–197. The only issue common to both suits is whether Hamilton was liable to National City. The New York confession of judgment does not reach the issue of whether TPC and/or Plechaty were liable

as guarantors and whether a deficiency existed after the sale of assets. Additionally, the sale of Hamilton's receivables after the judgment by confession raised new material issues, so *res judicata* and collateral estoppel cannot apply. *Goodson, supra,* at 201, 2 OBR at 739–740, 443 N.E.2d at 985–986; *Couch v. Middletown* (1993), 86 Ohio App.3d 128, 620 N.E.2d 177.

 Although TPC owned eighty percent of Hamilton, TPC was not a real party in interest in the judgment by confession and was not in privity with Hamilton. See *Whitehead, supra.* A guarantor is not in privity with the debtor. *Woodward v. Moore* (1862), 13 Ohio St. 136. Collateral estoppel only operates where all parties to the present action are bound by the prior judgment. *Goodson, supra.* The judgment by confession was against Hamilton only and TPC was not bound by this prior judgment. A parent corporation is not liable for the debts of its subsidiaries, absent proof the parent exercised complete dominion and control over the subsidiary and such control was used to commit a fraud or injustice. *Belvedere Condominium Unit Owner's Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075. There was no proof of such domination and control here.

For similar reasons, Ben Plechaty was not in privity with Hamilton either. Plechaty's position as chairman of the board of TPC did not by itself create liability for Hamilton's debt. As stated above, a guarantor is not in privity with the debtor. Therefore, the trial court erred if it granted plaintiff-appellee's motion for summary judgment on the basis of *res judicata* or collateral estoppel.

Plaintiff-appellee was entitled to summary judgment because there were no genuine issues of fact and, as a matter of law, appellee was entitled to a deficiency judgment against appellants in the amount of approximately 1.6 million dollars plus interest owed by Hamilton less $275,000. TPC admitted guaranteeing Hamilton's note. We will address the validity of Ben Plechaty's guarantee below. As discussed above, reasonable minds can only conclude that the proceeds of the sale of receivables was $275,000, and a deficiency balance was owed on the Hamilton note. See Civ.R. 56(C). Reasonable minds could only conclude that appellee sold the receivables in a commercially reasonable manner. There was some evidence the price was reasonable and no evidence it was not reasonable. The penalty of 1.6 million dollars was not prejudicial to the debtor or guarantor, and does not violate R.C. 1309.47(C) or 1309.45(B), which were designed to protect the debtor, not the buyer of collateral. Appellants were adequately informed that a deficiency balance might be due. Additionally, appellants waived the right to raise price or the structure of the transaction as a defense to an action for the deficiency balance.

Accordingly, this assignment of error is overruled.

### III

Appellants' third assignment of error states:

"The trial court erred in granting plaintiff-appellee's motion for summary judgment because material issues of fact exist disputing the validity of Ben L. Plechaty's purported guaranty to National City Bank."

Plechaty deposed that Mr. Zang of National City Bank asked him to guarantee the Hamilton debt, and Plechaty refused. Plechaty said he would guarantee the future debts of TPC. TPC's guarantee of Hamilton's debt was already in existence at that time. National City sent Plechaty a guarantee form, leaving blank the name of the debtor. Plechaty signed the form, but did not fill in the name of the debtor. Plechaty did not read the boilerplate language on the form, which stated:

" * * * the undersigned * * * absolutely and unconditionally guarantees the prompt and punctual payment when due, by acceleration or otherwise, of each obligation, direct, indirect or contingent, *now existing or hereafter created or acquired* * * * of the Debtor to the Bank * * *." (Emphasis added.)

When National City received the signed form from Plechaty, its agents filled in the name of the debtor as the Hamilton Cast Corporation. Plechaty notified National City that he never intended to guarantee Hamilton's debt.

Fraud could not have occurred, because Plechaty suffered no detriment. See *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 49, 570 N.E.2d 1076, 1083–1084. Plechaty would have been guaranteeing the Hamilton debt whether TPC or Hamilton was listed as the debtor on the guarantee form, because TPC had guaranteed Hamilton's debt. The guarantee signed by Plechaty was clearly a guarantee of all present and future debts of the debtor. Plechaty cannot escape liability because he failed to read the guarantee. *Campco Distributors, Inc. v. Fries* (1987), 42 Ohio App.3d 200, 537 N.E.2d 661. If TPC was listed as the debtor, Plechaty would have guaranteed the present and future debts of TPC, which included TPC's guarantee of the Hamilton debt. No genuine issues of fact exist, and the guarantee was not procured by fraud as a matter of law.

Accordingly, this assignment of error is overruled.

The decision of the trial court is affirmed.

*Judgment affirmed.*

HARPER, P.J., concurs.

O'DONNELL, J., dissents.

O'DONNELL, J., dissenting.

Respectfully, I must dissent from the conclusion reached by the majority regarding the effect of the National City Bank sale of the Hamilton Cast Corporation assets to Integrity Casting Corporation.

Consideration for this transaction as recited in the bill of sale is a $1,643,704.94 promissory note executed on May 25, 1993 in favor of National City Bank by Salvatore Esposito, president of Integrity Casting Corporation, as maker. National City Bank argues, and the majority believes, that affidavits of bank officers which controvert these original documents are controlling.

The parol evidence rule excludes evidence of prior or contemporaneous oral agreements which would vary the terms of a written contract. See 43 Ohio Jurisprudence 3d, Evidence and Witnesses, at Section 530. The general rule is stated at 428, Section 568:

" * * * [w]here the words of any written instrument are free from ambiguity * * * such instrument is always to be construed according to the strict, plain, common meaning of the words themselves; and in such case evidence dehors the instrument for the purpose of explaining it according to the surmised or alleged intention of the parties thereto is utterly inadmissible."

Here, by using affidavits, the bank attempts to defeat the parol evidence rule because these otherwise oral statements have been reduced to writing. Clearly, they are made after the time of the original transaction and their only purpose is to explain the intent of the parties and/or modify the explicit terms of the bill of sale and the promissory note. Because there is no ambiguity in these original transaction documents, the law precludes the use of affidavits or oral evidence to vary the terms contained in those documents.

The transaction between National City Bank and Integrity Corporation, entered into on May 25, 1993, stands separate and apart from the obligation of Hamilton Cast Corporation and the personal guarantee of Ben Plechaty. Because the sales price was the exact amount owed by Plechaty to the bank, his interposed defense of accord and satisfaction to the deficiency obligation is, in my view, valid.

In 15 Ohio Jurisprudence 3d, Compromise, Accord and Release, Section 26, the rule is stated that:

"An accord and satisfaction made with one who is a stranger to the transaction to which it relates is good, and will bar an action on the claim involved, if the person against whom the claim was made has either authorized or ratified the settlement. The fact that the debtor sets up the accord and satisfaction as a defense is sufficient to show his consent to the settlement."

Hence, since the terms of the transaction between Integrity and National City were presented to Plechaty and he had the opportunity to object but did not do so, the majority concludes that he assented to the terms of the transaction and finds Plechaty liable for the deficiency. I believe, however, the law is that the bank's subsequent sale of its repossessed assets to Integrity *at the same* $1,643,704.94 sale price constitutes a release of Plechaty's obligation. He did not object because clearly, there was no reason for him to object, since the sale at that price exonerated his debt. The bank entered an accord and satisfaction with Mr. Esposito by agreeing to accept $275,000 in full satisfaction of the $1,643,-704.94 obligation. The bank believed at the time that if Integrity did not pay the $275,000 in full, it could proceed against Integrity and or Esposito for the deficiency. Apparently, the bank felt that if it received the $275,000 it could then proceed to collect the deficiency against Plechaty, but this action is not permitted by law.

For these reasons, I would reverse the judgment of the trial court and enter judgment for the defendant on the deficiency obligation.