COHARA, Appellant and Cross–Appellee,

v.

CONSOLIDATED RAIL CORPORATION, Appellee and Cross–Appellant.

[Cite as *Cohara v. Consol. Rail Corp.*, 148 Ohio App.3d 153, 2002-Ohio-1557.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 79459 and 79819.

Decided April 4, 2002.

Stege & Michelson Co., L.P.A., Michael Michelson and Andrew J. Thompson, for appellant and cross-appellee.

Sheila A. McKeon and Timothy P. Roth, for appellee and cross-appellant.

TERRENCE O'DONNELL, Judge.

{¶ 1} Joseph Cohara appeals from a judgment of the common pleas court which awarded him prejudgment interest from August 25, 1999 to May 26, 2000 in connection with his breach-of-settlement claim against Consolidated Rail Corporation. On appeal, Cohara claims that the court should have calculated interest from August 25, 1999 to March 8, 2001, because, he asserts, Consolidated failed to provide him with an appropriate release or a settlement check until the latter date. In a second appeal, which we consolidated for purposes of review, Cohara separately asserts that the trial court erred in denying his motion for relief from that judgment.

{¶ 2} Consolidated cross-appeals from the court's award of interest, arguing that Cohara breached the settlement agreement by failing to sign a release; it therefore maintains that Cohara is not entitled to interest on the settlement.

{¶ 3} After reviewing these arguments, we have concluded that the court erred in denying Consolidated's motion for summary judgment and in awarding interest to Cohara. Accordingly, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

{¶ 4} In this case, counsel stipulated to the pertinent facts, which are that on August 29, 1997, Cohara filed a complaint (case No. 339635) against Consolidated Rail Corporation, his employer, alleging violations of the Federal Employers' Liability Act and the Federal Safety Appliance Act.

{¶ 5} Conrail, Inc. is the sole owner of Consolidated Rail Corporation. In 1998, Norfolk Southern Railway Company and CSX Transportation, Inc. purchased Conrail. In the stipulations, the parties describe the relationship of these entities as follows:

{¶ 6} "Since June 1, 1999, portions of Conrail's assets have been separately operated by subsidiaries of Norfolk Southern Corporation and CSX Corporation.

That portion of Conrail assets not separately operated by Norfolk Southern Railway Company and CSX Transportation, Inc. is operated by Conrail on behalf of its owners, Norfolk Southern Corporation and CSX Corporation. On or about March 1, 1999, Norfolk Southern Corporation and CSX Transportation, Inc. assumed administrative responsibility for Conrail FELA claims and lawsuits."

{¶ 7} On May 9, 1999, the parties settled case No. 339635 for $150,000, and Consolidated prepared a release and submitted it to Cohara on May 13, 1999, in furtherance of the settlement. This release stated in relevant part that Cohara would "* * * release and forever discharge the said *CONSOLIDATED RAIL CORPORATION, its predecessor, parent, affiliated and subsidiary companies or corporations* and any and all other parties, associations and corporations jointly or severally liable * * *." (Emphasis added.)

{¶ 8} Cohara, however, expressed "misgivings about the settlement" and subsequently decided to reject it. Accordingly, on May 20, 1999, he filed a motion to reinstate case No. 339635. Consolidated opposed his motion and, in addition, filed a motion to enforce the settlement agreement. On June 10, 1999, the court denied Cohara's motion to reinstate and, after conducting a hearing, granted Consolidated's motion to enforce the settlement.

{¶ 9} Thereafter, on August 25, 1999, Consolidated prepared a second release, which stated in part that Cohara would "* * * release and forever discharge Norfolk Southern Railway Company, CSX Transportation, Inc. and Consolidated Rail Corporation, and * * * to the same extent as if expressly named, their respective parents, subsidiaries and affiliated companies, their leased and operated lines, and all other persons, firms and corporations, all of the respective predecessors, successors, assignees, lessors, officers, directors, agents and employees of the aforesaid released parties, past and present, as well as their heirs and legal representatives * * *."

{¶ 10} Cohara refused to sign this release on the basis that Norfolk Southern Railway Company and CSX Transportation, Inc. were not parties to his settlement agreement with Consolidated Rail Corporation and that he did not want to sign a release naming his current employer, CSX Transportation, Inc. Consolidated, in turn, refused to deliver the settlement check without a signed release.

{¶ 11} Subsequently, on May 26, 2000, Consolidated agreed to remove Norfolk Southern Railway Company and CSX Transportation, Inc. from the release. At that point, Cohara demanded interest on the settlement and, on July 21, 2000, filed a second lawsuit (case No. 413549) against Consolidated Rail Corporation, claiming that Consolidated breached the original settlement agreement and praying for $150,000 plus prejudgment interest at 10 percent per annum.

{¶ 12} The parties filed cross-motions for summary judgment on Cohara's prejudgment interest claim.

{¶ 13} On March 8, 2001, after briefing the issues, Consolidated issued another release, which discharged *"CONSOLIDATED RAIL CORPORATION, its predecessors, parent, affiliated and subsidiary companies or corporations* and any and all other parties, associations and corporations jointly or severally liable * * *." (Emphasis added.) Cohara signed this release, which expressly left pending his claim for interest; with that understanding, Consolidated tendered the settlement check to him.

{¶ 14} On March 14, 2001, the court denied Consolidated's motion for summary judgment and awarded Cohara interest from August 25, 1999, the date of the second release, until May 26, 2000, the date Consolidated agreed to remove the names of its parent companies from the release.

{¶ 15} On March 22, 2001, Cohara filed a motion for relief from judgment, urging that interest should have been calculated through March 8, 2001, when Consolidated sent the final release. On April 6, 2001, with his Civ.R. 60(B) motion still pending, Cohara filed a notice of appeal. Consolidated filed a cross-appeal on April 12, 2001. Our court remanded this case to the trial court for its ruling on Cohara's motion for relief from judgment, which the court denied on June 14, 2001, returning Cohara's first appeal and Consolidated's cross-appeal to our court. Subsequently, Cohara filed a second appeal from the denial of his motion for relief from judgment, and we consolidated these appeals for purposes of review.

{¶ 16} On appeal, Cohara raises two assignments of error for review. They state:

{¶ 17} "I. The trial court committed reversible error when it failed to award plaintiff interest on the settlement between the parties through March 8, 2001.

{¶ 18} "II. The trial court committed reversible error when it failed to rule on plaintiff's motion for relief from judgment."

{¶ 19} In its cross-appeal, Consolidated Rail Corporation raises one assignment of error for review. It states:

{¶ 20} "The trial court committed reversible error when it denied Conrail's motion for summary judgment and ruled that plaintiff was entitled to interest on the $150,000 settlement amount from August 25, 1999 until May 26, 2000."

{¶ 21} We shall consider Consolidated's cross-appeal first because it is determinative of this case. On appeal, Consolidated argues that Cohara breached the settlement agreement by refusing to sign the original releases, that a court then had to order him to honor the agreement, that the releases it prepared subse-

quent to the order to enforce the agreement were appropriate, and that it is therefore entitled to summary judgment on Cohara's claim for interest. Cohara does not explain his refusal to sign the first release but rejected the second one because it included two "non-parties" to the settlement agreement and urges that he did not receive an appropriate release from Consolidated Rail until March 8, 2001.

{¶ 22} In *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267, the court set forth the following standard for summary judgment under Civ.R. 56(C):

{¶ 23} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

{¶ 24} Here, we are called upon to consider whether the trial court properly granted summary judgment to Cohara, whether it properly calculated interest, and whether it properly denied Consolidated's motion for summary judgment. Based on stipulation, no genuine issues of material fact exist; therefore, the only question before us is whether either party is entitled to judgment as a matter of law.

{¶ 25} R.C. 1343.03(A)[1] governs prejudgment interest for breach of contract claims and states:

{¶ 26} "In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."

---

1. Cohara quotes the post-H.B. 350 version of this statute. However, the Supreme Court found that version to be unconstitutional in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 715 N.E.2d 1062. Therefore, the pre-H.B. 350 version of R.C. 1343.03(A) applies to this case.

**158**

{¶ 27} The purpose of prejudgment interest under this statute is to make the nonbreaching party whole by compensating him for the period of time between the breach and judgment. See *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St.3d 110, 117, 652 N.E.2d 687. It follows that a breaching party is not entitled to prejudgment interest; nor is a nonbreaching party liable for it.

{¶ 28} In this case, Cohara breached the settlement agreement when he refused to sign the May 13, 1999 release of Consolidated Rail and instead expressed "misgivings" about the settlement and sought to have the court reinstate his FELA complaint.

{¶ 29} After the court ordered Cohara to honor the settlement agreement on August 3, 1999, Consolidated sent him a second release, which he again refused to sign, purportedly because it named Norfolk Southern Railway Company and CSX Transportation, Inc. In particular, Cohara complained that this release would have discharged his then-current employer, CSX, "from any and all known or unknown claims which had accrued since the day Appellant became an employee of CSX." However, Consolidated expressly limited this release to injuries arising from accidents which occurred "at or near Erie, Pennsylvania on or about September 4, 1994," "at or near Brookpark, Ohio on or about November 8, 1994," and "all other *accidents* to date." (Emphasis added.) There is no evidence in the record that Cohara suffered any other injuries prior to August 25, 1999.

{¶ 30} Subsequently, according to the stipulations, Consolidated offered to remove CSX from the release, but Cohara refused to proceed with settlement. On May 26, 2000, Consolidated proposed that Cohara "line out" the names Norfolk and CSX from the release, but Cohara still refused to sign or settle the matter. Then Consolidated offered to provide a new release, listing only Consolidated as the releasee, but Cohara again refused to execute such a release or to accept payment without Consolidated's agreement to pay interest on the settlement.

{¶ 31} Consolidated contends that Cohara unreasonably rejected the second release naming Norfolk and CSX because these entities are its parent companies, having assumed administrative responsibility for Consolidated's FELA claims on March 1, 1999, and because they were ultimately discharged by the inclusion of the language "parent * * * companies or corporations" in the release that Cohara eventually signed on March 8, 2001. Consolidated maintains that it did not breach the settlement agreement and that it would have delivered the settlement check if Cohara had signed a release. Consolidated contends that Cohara breached the agreement, stalled payment, and should not profit from the delay he induced; therefore, Consolidated urges that he is not entitled to any

prejudgment interest, and it argues that the court erred in denying its motion for summary judgment.

{¶ 32} We agree with Consolidated's position. Cohara caused the delay in receiving his settlement check by attempting to have the agreement vacated, by objecting to naming Consolidated's parent companies in the release, and by unreasonably refusing to resolve the case. Because Norfolk and CSX assumed responsibility for FELA claims against Consolidated on March 1, 1999, and because Consolidated limited the release to *accidents* occurring prior to that date, Cohara has not satisfactorily explained his objection to including these entities in the release. Significantly, the release document that Cohara eventually signed released "CONSOLIDATED RAIL CORPORATION, its predecessors, parent, affiliated and subsidiary companies or corporations" and therefore effectively released Consolidated's *parent* companies, Norfolk Southern Railway Company and CSX Transportation, Inc., even though not expressly named.

{¶ 33} According to the stipulations filed in this case, the *only issue* regarding Cohara's failure to sign a release concerned the inclusion of Norfolk and CSX. This delayed settlement, but because Cohara eventually signed a release of Consolidated and parent entities, no material difference existed between the release as originally submitted and the one he ultimately signed. Contrary to the dissenting view, no dispute ever existed regarding the term "accident," and Cohara did not raise concerns about the possible release of an "occupational disease" as his basis for forestalling settlement and signing a release. This court is limited to the record on appeal and should not create issues not raised by the parties below.

{¶ 34} Based on the foregoing, Consolidated did not breach the settlement agreement; rather, Cohara induced the delay and is not therefore entitled to prejudgment interest during this period. Accordingly, the trial court erred when it denied Consolidated's motion for summary judgment on Cohara's claim for interest, and we reverse that judgment.

{¶ 35} Our disposition of Consolidated's cross-appeal renders Cohara's assignments of error moot, and pursuant to App.R. 12(A)(1)(c), we decline to address them.

Judgment reversed
and case remanded.

PATRICIA A. BLACKMON, P.J., concurs.

ANNE L. KILBANE, J., dissents.

ANNE L. KILBANE, Judge, dissenting.

{¶ 36} On this appeal from an order of Judge Shirley Strickland Saffold that granted appellant Joseph Cohara a portion of the post-judgment interest he requested, I dissent. I would sustain Cohara's assignments of error and reverse the judgment in part and modify it. The majority has placed the cart before the horse. It ignores appellee and cross-appellant Consolidated Rail Corporation's ("Conrail's") obligation to pay the settlement when it is "due and payable" under R.C. 1343.03 and attempts to justify Conrail's mistaken contention that it had the ability to condition payment of the settlement upon Cohara's execution of a release. He was not required to execute any release, much less the blatantly unreasonable release submitted, in order to trigger Conrail's duty to tender payment and, since it failed to tender payment until March 8, 2001, I would order the judgment modified to include interest from August 25, 1999, until that date. Moreover, even though Cohara was willing to sign a release, Conrail did not proffer an acceptable release until that date, which only bolsters his claim for interest.

### Cohara's Duty to Execute Any Release.

{¶ 37} The majority baldly concludes that Cohara breached the settlement agreement by failing to execute the release submitted to him on August 25, 1999, without any indication that the agreement required him even to execute a release, much less the one presented to him on that date. The stipulation of facts states that "[o]n May 9, 1999, Plaintiff agreed to dismiss his suit against Defendant and release Defendant of all claims against it in return for payment of $150,000.00." The single "Defendant" was Conrail, and the phrase "all claims against it" means all claims then pending against Conrail and arising from the events alleged in Cohara's complaint.

{¶ 38} Cohara's complaint was dismissed with prejudice on May 11, 1999, and barred relitigation of those claims against Conrail and its privies.[2] The settlement agreement and dismissal provided Conrail all necessary protection against Cohara's motion to reopen, or an attempt to refile a complaint based upon the same events. A dismissal with prejudice is final and acts as res judicata with respect to the facts and the parties.[3] After dismissing the case, Cohara's endorsement of a release that embodied only the terms of the settlement would

---

2. *Musa v. Gillett Communications* (1997), 119 Ohio App.3d 673, 684, 696 N.E.2d 227, 234.

3. Id. at 685–686, 696 N.E.2d at 234–235; *Natl. City Bank v. The Plechaty Cos.* (1995), 104 Ohio App.3d 109, 114, 661 N.E.2d 227, 230.

be a useless exercise and thus was unnecessary to trigger Conrail's duty to tender payment.[4]

{¶ 39} Because the settlement agreement did not contain terms requiring a release of liability beyond that achieved by the dismissal of the complaint with prejudice, no other release was necessary before the money became due and payable under R.C. 1343.03(A).[5] The parties agreed to the terms of the settlement, and all claims against Conrail were released via the dismissal with prejudice. Although Cohara was willing to execute a release similar to the one submitted to him on May 13, 1999, even this release was more extensive than that achieved by the dismissal with prejudice, it was not part of the parties' agreement, and was not properly a condition precedent to Cohara's right to payment or Conrail's duty to pay.

{¶ 40} Under R.C. 1343.03(A), interest on a settlement agreement begins to accrue when the money becomes "due and payable." Cohara does not argue that the money became "due and payable" at any point prior to August 25, 1999, and, therefore, I will not address the issue of whether the money became due prior to that time. Although the majority's argument is somewhat unclear on this point because it insists on blaming Cohara for his motion to reopen the case, even it does not contend that Cohara's initial motion to reopen gave Conrail carte blanche to delay payment and bar him from any claim for post-judgment interest after the judge ordered enforcement of the settlement agreement.

{¶ 41} While one can argue that the money was not due and payable while Cohara sought to reopen the case, after the judge ordered the settlement enforced, Conrail's sole reason for delaying payment was the supposed condition requiring him to release his claims, which had already been accomplished by the dismissal. Conrail was not entitled to condition payment on Cohara's execution of any release after the complaint was dismissed.

{¶ 42} The majority finds that Cohara unreasonably refused to sign a release, which was a condition to Conrail's duty to pay, and thus the money did not become "due and payable" prior to March 8, 2001. This conclusion is patently incorrect.[6] Just as a judgment debtor can avoid post-judgment interest only by tendering payment unconditionally, a settlement debtor can avoid post-settlement

---

**4.** "Lex neminem cogit ad vana seu inutilia peragenda." The law compels no one to do vain or useless things.

**5.** Unless, of course, the parties agree to a wider release of claims, as the defendants sought in the August 25, 1999 release. The difficulty here, as noted, is that the settlement agreement did not contemplate the release of claims other than those in the complaint.

**6.** See R.C. 1343.03(A); *Krauss v. Kilgore* (July 26, 1999), Butler App. No. CA99–02–031, 1999 WL 552737; *Blake v. Fligiel* (Nov. 8, 2001), Cuyahoga App. No. 79314, 2001 WL 1400023.

interest only by tendering payment in accordance with the terms of the settlement agreement. The debtor cannot alter the terms of the agreement by attaching a condition that was not part of the bargain. The majority has ignored the provisions of R.C. 1343.03 and, instead, places the onus on Cohara for not blindly endorsing a proffered release that went beyond the bounds of the agreement to release all claims then pending against Conrail, when he had already released the claims in accordance with the agreement.

### Cohara's Duty to Execute the August 25, 1999 Release.

{¶ 43} Second, the majority offhandedly, and incorrectly, minimizes Conrail's wholly unreasonable and unjustified request that Cohara release claims for events that were not the subject of his complaint, concluding that the language was limited to "accidents," and finds, with no support in the record, that Cohara had not been involved in any other "accidents." Regardless of whether Cohara was involved in any other "accidents," however that term is defined, between the time of his complaint and August 25, 1999, he was not required to release Conrail from claims other than those arising from the two incidents stated in his complaint, he was not required to release any claims against entities not in privity with Conrail, and he was not required to present this court with any evidence that he was involved in another "accident" in order to prove the proposed release terms unreasonable.

{¶ 44} The original release proffered to Cohara on May 13, 1999, stated that he would release Conrail and "its predecessor, parent, affiliated and subsidiary companies or corporations and any and all other parties, associations and corporations jointly or severally liable" from all claims arising from incidents occurring on September 4, 1994 and November 8, 1994. When, however, Judge Judith Kilbane Koch[7] denied Cohara's motion to reopen the case and ordered enforcement of the settlement agreement, Conrail presented him with a second and different release on August 25, 1999.

{¶ 45} The majority has already reproduced much of the language of the second proposed release, so I will not copy it here. However, for those who tend to skim over the lengthy statement of erstwhile privies, I will condense that language to its essence, which is as follows:

{¶ 46} "i. I, Joseph E. Cohara[,] * * * do hereby release and forever discharge Norfolk Southern Railway Company, CSX Transportation, Inc. and Consolidated Rail Corporation, * * * and all other persons, firms and corporations, * * * of and from all claims which I have or may hereafter have, for

---

**7.** Judge Kilbane Koch presided over Cohara's original complaint and settlement; Judge Strickland Saffold presided over the instant complaint for interest on the settlement.

personal injuries, known or unknown, and/or loss of any kind resulting or in any way arising from [the accidents alleged in the complaint] * * * and all other accidents to date." (Emphasis added.)

{¶ 47} This is not a typographical error, nor is it out of context. The August 25, 1999 document, by its plain language, conditions the payment of $150,000 on Cohara's releasing the world from liability for all claims, "known or unknown," occurring before he endorses the document. If he had been rear-ended in traffic the day before, this document sought release of any claim against the tortfeasor. Of course, neither the record nor the stipulation of facts indicates that the agreement to settle Cohara's then pending claims against Conrail contemplated such a broad release of liability.

{¶ 48} Seeking release for parties and events outside those in the complaint is beyond the scope of the agreement, and Cohara's refusal to grant such a release was justified on principle alone, without any discussion of whether he had been involved in any other "accidents," and without attempting to define the term "accidents" for purposes of the release. Furthermore, even if the release could be construed as limited to Conrail and its predecessors, affiliates and subsidiaries, which it plainly is not, the elephant in the corner here is the possibility that Cohara might have a claim for asbestosis or some other occupational disease, resulting from exposure prior to August 25, 1999, but not yet apparent.[8] The term "accidents" is not defined in the release and, because Conrail had no business asking for release of any claims other than those in the complaint, Cohara had every right to insist that the term be removed, without stopping to quibble over its definition [9] or risk that Conrail or some other party would assert the release as a defense in some future case and then litigate its meaning.

{¶ 49} Even now, the majority stops short of expressly defining a limit to the word "accidents," failing to state that the word does not include the contraction of occupational diseases. The majority opinion's placement of emphasis upon the word "accidents" is feeble assurance indeed, and even at that Cohara did not have the benefit of even this ambiguous and ambivalent gesture at the time the release was proffered. The majority not only errs in failing to recognize that Cohara was entitled to reject the unreasonable proposal on its face but, even on the majority's terms, he would have compromised any subsequent claim by allowing Conrail to

---

8. In the summary judgment proceedings Cohara expressed concern about releasing claims for latent injuries and claims arising from a collective bargaining agreement with his current employer.

9. Surely a defendant could argue that any event that resulted in unintended harm was accidental, even if the conduct causing the harm was intentional, i.e., the contracting of a respiratory ailment caused by exposure to asbestos as part of employment.

interject an ambiguous term, unwarranted under any definition, that would fester until the claim was brought.

{¶ 50} The majority's position is hypocritical; on one hand it faults Cohara for failing to sign a release that went beyond the settlement agreement, arguing that the additional terms were harmless, but fails to fault Conrail for refusing to remove the same supposedly harmless terms. While aggravating in any sphere, it is most depressing to hear a judge tell a litigant that a contract term means nothing, yet he must agree to it rather than have it removed. Such assurances legendarily result in the purchase of swampland.

{¶ 51} The May 13, 1999 document sought release of Conrail, a number of "affiliated" entities that may or may not have had the identity of interest necessary to bar relitigation as a matter of law,[10] then sought release of "all other parties" jointly or severally liable for claims arising from the complaint. By the stipulated terms of the settlement agreement, even this release was too broad, as Cohara had agreed only to release *Conrail* from those claims. The "affiliated" entities included in this agreement would be only those legally entitled to claim preclusion as its privies, which would be accomplished by naming only Conrail.

{¶ 52} Cohara eventually agreed to release Conrail and "all other parties" from liability for the events arising from the complaint, although he was not required to under the terms of the original agreement. It appears that after the August 3, 1999 order enforcing the settlement, he was willing to execute the May 13, 1999 release, even though it went beyond the agreement's terms. The major difference between the May 13, 1999 release, the August 25, 1999 release, and the March 8, 2001 release that Cohara eventually signed, however, is that the second document did not limit the release of liability to the events in his complaint, but instead required him to release all parties for all events to that date.

{¶ 53} It is clear that the additional terms in the second proffered release changed its effect relative to the first and, again, there was no reason that Cohara should have been required to agree to those terms, guess at their effect, or accept the representation that they were harmless or meaningless and risk the opposite. The provision attempting to release all entities from liability for "all other accidents to date" broadens even further the inappropriate inclusion of other parties in the first release, and is wholly unreasonable. Cohara was not required

---

10. See *Musa,* 119 Ohio App.3d at 684, 696 N.E.2d at 234 (subsidiary is in privity with named parent, analyzing federal law); cf. *Natl. City Bank,* 104 Ohio App.3d at 115, 661 N.E.2d at 230 (parent not necessarily in privity with named subsidiary); see, also, *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 184, 637 N.E.2d 917, 923 (asserting a somewhat vague and circular definition of "privity" and assessing the "alignment of interests" to determine privity in the particular case).

to release any other claims, nor was he required to investigate all of his possible claims before rejecting the proposal.[11]

{¶ 54} Furthermore, the judge's conclusion that the May 26, 2000 offer to cross out reference to Norfolk Southern and CSX resolved all defects in the August 25, 1999 release was incorrect; that act would have no effect, because the document still purported to release "all * * * persons, firms and corporations" from all claims. Even when Cohara apparently was willing to release all parties from the claims in *his complaint*, Conrail then insisted that he sign a release that could hardly have been more expansive or more unreasonable.

{¶ 55} The majority responds to these truths by stating that the case must be decided solely upon the stipulations, and then claims that Cohara's refusal to sign the release was not related to the overbroad release of claims, but to his objections to naming Norfolk Southern and CSX as parties. This machination fails on its own terms, however, because the stipulations show that Conrail's duty to tender payment was not conditioned on Cohara's executing any release. He had already performed his part of the bargain when the case was dismissed with prejudice, and that fact should dispose of this case; any remaining statements in the parties' stipulations are irrelevant.

{¶ 56} Moreover, even if Cohara objected to the release for the wrong reasons, the majority has not explained why his failure to articulate its true defects required him to sign it. If an unscrupulous dealer knowingly[12] offers defective merchandise and the customer objects to its color, is the customer then obligated to accept the merchandise because the dealer went to the trouble of painting it, even though the customer is now aware of its defect? The answer, for those who have trouble with such things, is no, because requiring the customer to buy the defective goods would reward the dealer for his deceit. The majority opinion does just this; by focusing on Cohara's conduct, it tells defendants that it is good and ethical and professional and right to attempt such deceit, because only good can come of it.

---

11. For example, if toxic waste had leaked into Cohara's neighborhood, turning it into a future Love Canal, he would have released any claims related to it. If his wife had been exposed to harmful chemicals or radiation at her job, he would have released any derivative claims. Even if one finds these scenarios unlikely, as well as the multitude of others that can be imagined, Conrail had no right to request such a release, and Cohara had no duty to execute it as a condition to payment.

12. For those who do not believe a drafter should know the contents of a document, the evidence here shows that Conrail specifically altered the terms of its first release to contain these terms. Therefore, even if one could raise boilerplate as a defense to intent, the circumstances here show that the offending terms were deliberately included in the August 25, 1999 release.

{¶ 57} Furthermore, the majority has misstated the stipulations by claiming that Cohara's only reason for refusing to sign the August 25, 1999 release was its inclusion of Norfolk Southern and CSX as named parties. In fact, Cohara refused to sign the release after Conrail offered to cross out those names and before he claimed entitlement to interest. The stipulations reflect no reason for his refusal to execute the release with the offending names crossed out, and Conrail admitted, in its motion for summary judgment, that Cohara's reasons for doing so were unknown. It is, therefore, reasonable to address other reasons for Cohara's refusal because the stipulations are ambiguous or incomplete. More-over, he raised these arguments in his briefs and at oral argument, and his arguments to the trial judge show his concern that he was releasing all claims against his current employer, despite the fact that he attributed the problem to the explicit naming of his employer instead of to the overbroad statement of claims released. The majority's selective priggishness [13] should not be excused, for it is employing dreadful means to uphold a defendant's insistence on a patently outrageous and indefensible release. This turns logic and policy on its head, as the majority apparently is intent on "protecting" defendants from plaintiffs who unreasonably delay payment of claims in order to increase the amount of statutory interest owed. Such a policy is as ridiculous as it sounds, for the difficulty courts have always faced is that defendants delay payment of claims in order to continue reaping the benefit of their money—it is far less likely that courts will be deluged by judgment creditors who have thwarted debtors' efforts to pay and, thus, there is no reason to deny interest payments on such an artifice.

{¶ 58} The majority invites defendants not only to claim that payment is conditioned on the execution of releases when such conditions were not bargained for, but also to include terms in those releases that are so offensive that no lawyer could competently allow his client to agree to them. By insisting upon such offensive terms, defendants can withhold payment and point to the majority decision in defending against claims for post-judgment/post-settlement interest. This must be the result sought by the majority because there is no other reason to render this decision.

{¶ 59} The opinion might have begun as a senseless reflex, but the majority has persisted in it even after faced with the overwhelming illogic of its view. It casts a blind eye both to R.C. 1343.03 and to Conrail's ability to interplead the settlement funds under Civ.R. 22, under the guise that Cohara enabled Conrail to

---

13. Not only has the majority failed to recognize or address the stipulations' failure to condition payment on the execution of a release, it attempts to limit the stipulations only after addressing Cohara's claims, stated in his briefs and at oral argument, that the proposed release of claims was overbroad. The majority attempts to limit the arguments by manipulat-ing the stipulations only after finding that its argument in support of the proposed release is irremediable and insipid.

cheat him. I would sustain Cohara's assignments of error, overrule Conrail's assignments, reverse the judgment, and remand with instructions to grant Cohara statutory post-settlement interest from August 25, 1999 until March 8, 2001.